SABRINEH ARDALAN
sardalan@law.harvard.edu
SAMEER AHMED
sahmed@law.harvard.edu
Harvard Immigration and
Refugee Clinical Program
6 Everett Street; Wasserstein 3103
Cambridge, Massachusetts 02138
Telephone: 617.384.7504

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARVARD IMMIGRATION AND REFUGEE CLINICAL PROGRAM,<br>6 Everett Street, Suite 3103 (WCC),<br>Cambridge, MA 02138<br><br>             Plaintiff,<br><br>     v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION,<br>1300 Pennsylvania Ave. NW,<br>Washington, DC 20229<br><br>             Defendant. | Docket No.<br><br><br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

## **INTRODUCTION**

1. Plaintiff Harvard Immigration and Refugee Clinical Program ("The Program" or "Plaintiff"), by and through its undersigned attorneys, brings this action against Defendant United States Customs and Border Protection ("CBP" or "Defendant") as follows:

1

2. This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), for injunctive and other relief to compel the disclosure and release of documents to the Plaintiff. The documents in questions relate to the FOIA request submitted to CBP on May 29 of 2020.

3. The Program's FOIA request seeks to educate the public, including legal services providers and hundreds of valid visas holders, on how to respond to unlawful denials of entry and detention at various ports of entry.

4. Over the past five years, CBP has repeatedly denied entry to individuals from the Middle East, especially Iran, who arrive at ports of entry with valid visas and/or other required documentation. These individuals include students and scholars turned away by CBP at Boston's Logan Airport and other ports of entry.[1]

5. FOIA, 5 U.S.C. § 552, mandates disclosure of records held by a federal agency, in response to a request for such records by a member of the public, unless records fall within certain narrow statutory exemptions—none of which CBP has claimed.

6. As the Supreme Court has recognized, "the basic purpose of [FOIA] is 'to open agency action to the light of public scrutiny.'" *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). Such scrutiny improves the public's understanding of governmental operations and, thus, enables a vibrant and functioning democracy.

7. The Program submitted its FOIA Request to CBP to educate the public about the federal government's policies and instructions regarding denial of entry, visa revocations, expedited removal, electronic device searches, and social media data collection for certain visa holders, including international students and scholars.

---

[1] FOIA litigation has revealed the existence of an unlawful directive in a similar context, based on which CBP detained hundreds of Iranians for hours at a port of entry, regardless of their lawful status. *See* Press Release, *Emails Show CBP Detained Hundreds of Iranians for Hours Pursuant to Unlawful Directive*, Nov. 17, 2020, https://www.nwirp.org/emails-show-cbp-detained-hundreds-of-iranians-for-hours-pursuant-to-unlawful-directive/.

8. Yet, despite CBP's statutory obligation to respond to a FOIA request within 20 days, and the directive on remand from the Appeals Office, CBP has failed to conduct a reasonable search and respond to the Program's FOIA request in its entirety.

9. Accordingly, the Program seeks to compel Defendant to comply with its obligations under FOIA and produce the relevant documents.

## THE PARTIES

10. Plaintiff, the Harvard Immigration and Refugee Clinical Program, is a clinical program at Harvard Law School, with its principal place of business in Cambridge, Massachusetts. The Program engages in direct representation of individuals applying for immigration relief and seeking release from immigration detention. The Program also engages in district court and appellate litigation and policy advocacy on behalf of immigrants.

11. Defendant CBP is a federal law enforcement agency under the Department of Homeland Security ("DHS") that is charged with regulating and facilitating international trade, collecting import duties, and enforcing U.S. regulations, including trade, customs, and immigration. CBP is headquartered at 1300 Pennsylvania Avenue, NW, Washington, D.C. 20229, and in Massachusetts at 10 Causeway Street, Room 801, Boston, Massachusetts 02222.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 28 U.S.C. § 1331.

13. Venue is appropriate in the District of Massachusetts pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C § 1391(e), because it is the district in which the Program has its principal place of business and because CBP is an agency acting in its official capacity.

14. After the administrative appeal, the Program has exhausted all required administrative remedies and is entitled to proceed with this judicial action pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

# FACTS

**Background**

15. Over the past two years, CBP has denied multiple students and scholars from countries in the Middle East, especially Iran, entry to the United States, despite their arrival at ports of entry with valid visas and/or other required documentation. Since August 2019, for example, CBP has sent at least 10 Iranian students with valid F-1 visas back to Iran. Over seven of those students traveled through Boston's Logan Airport.[2]

16. Some of these individuals allege serious infractions by CBP, including several complaints about an individual officer.[3]

17. One Iranian student, for example, was admitted to the Master of Theological Studies Program at the Harvard Divinity School for the 2019-2020 academic year. The U.S. State Department issued her a student visa on September 11, 2019, after months of administrative processing.[4] But upon arrival at Boston Logan Airport on September 18, 2019, CBP subjected her to over eight hours of intensive questioning and ultimately refused to admit her.[5] Instead, CBP issued an expedited removal order, which renders her inadmissible to the United States for five years.[6]

---

[2] Caleb Hampton, *'Treated like a terrorist': US deports growing number of Iranian students with valid visas from US airports*, The Guardian (Jan. 14, 2020), https://www.theguardian.com/us-news/2020/jan/14/they-treated-me-like-a-terrorist-the-vetted-iranians-blocked-from-the-us.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

18. Another case of an Iranian student with a valid visa sent back to Iran by CBP involves Shahab Dehghani. Mr. Dehghani, who arrived at Boston Logan Airport on January 19, 2020, was enrolled to study at Northeastern University.[7]

19. CBP officials detained him and questioned him for hours before revoking his student visa, which the State Department granted him after a year of vetting.[8] Despite a judge's order that Mr. Dehghani remain in the United States for a hearing, CBP removed Mr. Dehghani.[9]

20. More recently, in April 2021, CBP turned away a Canadian citizen, born in Iran, at the U.S.-Canada border, despite valid documentation allowing her to enter the United States so she could pursue a two-year fellowship at Harvard. She was accompanied by her husband, who is also an Iranian-born Canadian citizen, and their two young Canadian citizen children, all of whom also had the documentation required to enter the United States. CBP detained and questioned them for hours and issued her husband an expedited removal order, rendering him inadmissible to the United States for five years.

**Plaintiff's FOIA Request and Defendant's Response**

21. On May 29, 2020, Plaintiff submitted a FOIA request to Defendant CBP. (*See* Exhibit 1). Plaintiffs sought the following documents from the period beginning January 1, 2012 to present regarding the expedited removal or withdrawal of admission of persons presenting F-1 visas ("F-1 visa holders") at all U.S. ports of entry:

    I. Records regarding the expedited removal of persons who have presented an F-1 visa at a port of entry (each such instance, an "F-1 Expedited Removal"), including:
        a. The total number of F-1 Expedited Removals at each port of entry, including Boston Logan Airport
        b. The total number of F-1 Expedited Removals where the statutory basis given for the removal was INA § 212(a)(7) or a subparagraph of § 212(a)(7)

---

[7] Caleb Hampton, 'Treated like a terrorist': US deports growing number of Iranian students with valid visas from US airports, The Guardian (Jan. 14, 2020), https://www.theguardian.com/us-news/2020/jan/14/they-treated-me-like-a-terrorist-the-vetted-iranians-blocked-from-the-us.
[8] *Id.*
[9] *Id.*

    c. The total number of F-1 Expedited Removals in which the recorded reason for the removal was that the entrant could not overcome the presumption of immigrant intent
    d. The total number of instances where CBP initiated expedited removal proceedings against an F-1 visa holder, and the F-1 visa holder was granted admission into the United States
    e. The total number of F-1 Expedited Removals where the F-1 visa holders were questioned by or interacted with an ICE agent
    f. The total number of F-1 Expedited Removals where the F-1 visa holders were questioned by or interacted with an FBI agent
    g. The total number of F-1 Expedited Removals where the F-1 visa holders' electronic devices were searched at the port of entry
    h. The total number of F-1 Expedited Removals where CBP sought the F-1 visa holders' social media identifiers
    i. All CBP records for each F-1 Expedited Removal at Boston Logan Airport between January 1, 2012 and the present date, including records disclosing:
        i. Date of decision of the expedited removal
        ii. National origin of the F-1 visa holder
        iii. Statute under which the F-1 visa holder was found to be inadmissible
        iv. Arrival time of the F-1 visa holder's flight
        v. Duration of time the F-1 visa holder spent in secondary screening
        vi. Whether an ICE agent questioned the F-1 visa holder
        vii. Whether an FBI agent questioned the F-1 visa holder
        viii. Number of times the F-1 visa holder requested access to counsel
        ix. Whether the F-1 visa holder was granted access to counsel
        x. Whether the F-1 visa holder was denied access to counsel
        xi. Whether the F-1 visa holder's electronic devices were searched
        xii. Whether the F-1 visa holder's social media identifiers were sought
        xiii. Name of the CBP officer who initiated the expedited removal proceedings
        xiv. Name of the CBP shift supervisor at the time when the expedited removal proceedings were initiated

II. Records regarding the withdrawal of admission of F-1 visa holders at a port of entry (each such instance, an "F-1 Withdrawal of Entry") including:
    a. The total number of F-1 Withdrawals of Entry at each port of entry, including Boston Logan Airport

  b. The total number of F-1 Withdrawals of Entry where the F-1 visa holders were questioned by or interacted with an ICE agent
  c. The total number of F-1 Withdrawals of Entry where the F-1 visa holders were questioned by or interacted with an FBI agent
  d. The total number of F-1 Withdrawals of Entry where the F-1 visa holders' electronic devices were searched at the port of entry
  e. The total number of F-1 Withdrawals of Entry where CBP sought the F-1 visa holders' social media identifiers
  f. All CBP records for each F-1 Withdrawal of Entry at Boston Logan Airport between January 1, 2012 and the present date, including:
    i. Date the withdrawal of admission was made
    ii. National origin of the F-1 visa holder
    iii. Arrival time of the F-1 visa holder's flight
    iv. Duration of time the F-1 visa holder spent in secondary screening
    v. Whether an ICE agent questioned the F-1 visa holder
    vi. Whether an FBI agent questioned the F-1 visa holder
    vii. Number of times the F-1 visa holder requested access to counsel
    viii. Whether the F-1 visa holder was granted access to counsel
    ix. Whether the F-1 visa holder was denied access to counsel
    x. Whether the F-1 visa holder's electronic devices were searched
    xi. Whether the F-1 visa holder's social media identifiers were sought
    xii. Name of the CBP officer who authorized the withdrawal of admission
    xiii. Name of the CBP shift supervisor at the time when the withdrawal of admission occurred

 III. All directives, orders, training materials, memoranda, guidance, briefings, instructions, policies, procedures, rules, regulations, e-mail, other electronic communications and/or any other communications, whether issued verbally or in writing, regarding the following:
  a. CBP officials' assessment of the admissibility of F-1 visa holders at ports of entry, including whether to deny entry to F-1 visa holders, revoke the visas of F-1 visa holders, initiate expedited removal proceedings against F-1 visa holders, and request withdrawals of admission from F-1 visa holders
  b. Any review by the Department of Homeland Security Office of Inspector General ("OIG") or any other independent

    agency of ports of entry in which CBP officials have denied entry to visa holders, revoked visas of visa holders, issued expedited removal orders, and/or requested withdrawals of admission from visa holders

  c. Any review by the OIG or any other independent agency of CBP officials' use and application of INA § 212(a)(7)

  d. Any guidance to CBP officials related to the OIG report published in January 2018 detailing CBP's failure to fully comply with court orders to enjoin implementation of Executive Order 13769 of January 27, 2017

  e. Any guidance to CBP officials related to enhanced vetting of individuals from countries included in Executive Order 13780 of March 6, 2017, Presidential Proclamation 9645 of September 24, 2017, and Presidential Proclamation 9983 of January 31, 2020

  f. Any guidance to CBP officials related to the formation, development, and/or implementation of Tactical Terrorism Response Teams

  g. Any guidance regarding ICE's involvement with CBP in denying entry to visa holders, revoking visas of visa holders, issuing expedited removal orders, and/or requesting withdrawal of admission from visa holders.

22. On June 4, 2020, CBP responded to this request, asserting that CBP was "granting [the Program's] request." The response indicated that the records were "approved for release in their entirety, no deletions or exemptions [having] been applied." (*See* Exhibit 2).

23. However, the records provided by CBP were incomplete in many respects, including the requested time period and geographic scope. The six pages provided only included some ports of entry and only information from January to May of FY 2020. Moreover, CBP's production included only the date, type of visa, port of entry, and disposition type (i.e. expedited removal or withdrawal) – missing much of the detail requested. (Exhibit 3).

24. The response did not include any information regarding the number of F-1 visa holders questioned by ICE or the FBI or subjected to searches of their electronic devices. The response did not indicate how many F-1 visa holders' social media identifiers CBP sought. The response did not indicate how many individuals were granted or denied access to counsel. The response did not include the national origin of the F-1 visa holders subjected to denial of entry, revocation of visa or expedited removal. Nor did the response include

the names of the CBP officers or shift supervisors on duty during either the withdrawal of admission or the expedited removal.

25. Although explicitly requested, the six pages produced by CBP did not contain any directives, orders, training materials, memoranda, guidance, briefings, instructions, policies, procedures, rules, regulations, e-mail, other electronic communications or any other communications regarding CBP officials' assessment of the admissibility of F-1 visa holders at ports of entry.

26. The produced documents did not contain information regarding reviews by the Department of Homeland Security Office of Inspector General ("OIG") or any other independent agency of ports of entry in which CBP officials have denied entry to visa holders; review by the OIG or any other independent agency of CBP officials' use and application of INA § 212(a)(7); guidance to CBP officials related to the OIG report published in January 2018 detailing CBP's failure to fully comply with court orders to enjoin implementation of Executive Order 13769 of January 27, 2017; and guidance to CBP officials related to enhanced vetting of individuals from countries included in Executive Order 13780 of March 6, 2017, Presidential Proclamation 9645 of September 24, 2017, and Presidential Proclamation 9983 of January 31, 2020.

27. The produced documents did not include any guidance to CBP officials related to the formation, development, and/or implementation of Tactical Terrorism Response Teams; or guidance regarding ICE's involvement with CBP in denying entry to visa holders, revoking visas of visa holders, issuing expedited removal orders, and/or requesting withdrawal of admission from visa holders.

Plaintiff's Administrative Appeal

28. On July 23, 2020, the Program appealed CBP's response as improper and insufficient to CBP's Policy and Litigation Branch, FOIA Appeals.

29. In the Administrative Appeal, the Program requested that CBP "conduct an adequate search for responsive records and produce all non-exempt portions of those records as soon as possible." (*See* Exhibit 4).

30. On September 30, 2020, CBP's Policy and Litigation Branch, FOIA Appeals, responded to the Program's administrative appeal.

31. The response indicated that, "while initial searches were begun, the searches were not completed prior to the closure of your August 2020 initial FOIA request." Consequently, the CBP's Policy and Litigation Branch remanded the Program's FOIA request back to CBP's FOIA Division "with instructions that the FOIA Division should reopen the case" and keep the Program "apprised of its progress within twenty (20) days from the date of this letter." (*See* Exhibit 5).

32. To date, CBP's FOIA Division has not only failed to produce the requested documents in "their entirety," as CBP's response to the Program's initial FOIA request indicated that the agency would, but CBP has also failed to "apprise" the Program of its process within twenty days of the remand from the appeal.

33. CBP's production remains incomplete and does not encompass all responsive documents in CBP's custody or control that are subject to the FOIA. Upon information and belief, CBP possesses documents responsive to the Program's original request that they have yet to produce.

34. CBP failed to "make reasonable efforts to search" for records, as evidenced by its decision to transfer the Program's FOIA Request. 5 U.S.C. § 552(a)(3)(C).

35. CBP failed to acknowledge the remand order from the Policy and Litigation Branch, instructing it to produce the requested documents.

Failure to Provide Fee Waiver

36. The Program's FOIA request also sought a fee waiver of all costs incurred by CBP in answering the request because the information sought is "likely to contribute significantly to public understanding of the operations or activities of the government and [was] not primarily in the [Plaintiff's] commercial interest." 5 U.S.C. § 552(a)(4)(A)(iii). (*See* Exhibit 1).

37. As the Program's request explained, "[o]ne primary goal of [the Program] is to disseminate information about and make the public aware of discriminatory immigration policies, including CBP policies that unfairly target F-1 visa holders and other immigrants from Middle Eastern countries. The Program also represents F-1 visa holders who have been wrongly denied entry in the United States by CBP." *Id.*

38. In response to the Program's request for a fee waiver, CBP stated that the fee waiver request "has been determined to be not applicable as the request is not billable." (*See* Exhibit 6).

39. However, CBP made that determination as part of its insufficient and improper response.

40. Therefore, to the extent a fee is applicable to the Program's FOIA request, a fee waiver should be granted. *See* 5 U.S.C. § 552(a)(4)(A)(iii) (fees "shall" be waived if criteria are met); *see also* 6 C.F.R. § 5.11(k)(1) (fees "shall" be waived when "[d]isclosure of the requested information is in the public interest . . . and [d]isclosure of the information is not primarily in the commercial interest of the requester").

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**

Violation of 5 U.S.C. § 552(a)(3) For Failure To Conduct An Adequate Search For Responsive Records

41. The Program repeats, re-alleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

42. Pursuant to FOIA, 5 U.S.C. § 552(a), the Program has a statutory right to access requested agency records.

43. Pursuant to FOIA, 5 U.S.C. § 552(a)(3)(C), Defendant must "make reasonable efforts to search" for the information requested.

44. Upon information and belief, Defendant possesses records responsive to the Program's FOIA Request and the remand resulting from the Program's administrative appeal that CBP has failed to produce without a legal basis for withholding such records, in violation of FOIA, including but not limited to 5 U.S.C. §§ 552(a)(3)(A) and 6(A).

45. Defendant failed to make reasonable efforts to search for records responsive to the Request, in violation of Plaintiff's rights under FOIA, including but not limited to 5 U.S.C. § 552(a)(3).

46. Plaintiff asks that this Court "enjoin the agency from withholding agency records" and "order the[ir] production," given that the agency's improper withholding of records. *See* 5 U.S.C. § 552(a)(4)(B).

## SECOND CAUSE OF ACTION
### Violation of 5 U.S.C. § 552(a)(4)(A)(iii) For Failure To Grant Waiver of Fees

47. The Program incorporates each of the foregoing paragraphs of this Complaint.

48. For the CBP FOIA Request, the Program requested a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that the disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the [Requestors'] commercial interest."

49. To date, CBP has not granted the Program a fee waiver in this case.

50. CBP's failure to grant the Program a waiver of fees associated with the production of responsive documents violates 5 U.S.C. § 552(a)(4)(A)(iii).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the Harvard Immigration and Refugee Clinical Program, respectfully requests that this Court enter judgment for the Program and award the following relief:

51. Injunctive relief, ordering CBP to respond to the Program's FOIA Request, by a date certain, by (a) conducting a search using "reasonable effort[s]" "for the purpose of locating those records which are responsive" to the Program's FOIA Request, as required by 5 U.S.C. §§ 552(a)(3)(C)-(D); (b) demonstrating that they have conducted an adequate search; (c) producing to [the Program] all non-exempt records or portions of records responsive to the Program's FOIA Request, as well as a Vaughn index of any records or portions of records withheld due to a claim of exemption; and (d) precluding CBP from withholding the requested records;

52. Retain jurisdiction of this action to ensure no agency records are wrongfully withheld, and order CBP to disclose any wrongfully withheld records;

53. Order CBP to grant the Program a waiver for fees associated with the production of the requested records;

54. Award the Program its costs and attorney fees reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

55. Grant the Program such other and further relief as the Court may deem just and proper.

Dated: February 23, 2022

                                          Respectfully submitted,

                                          By: /s/ Sabrineh Ardalan
                                          Sabrineh Ardalan (BBO #706806)
                                          Sameer Ahmed (BBO #688952)
                                          George Biashvili, Law Student

                                          HARVARD IMMIGRATION AND
                                          REFUGEE CLINICAL PROGRAM,
                                          HARVARD LAW SCHOOL

6 Everett Street, Wasserstein 3103<br>
Cambridge, Massachusetts 02138<br>
Telephone: 617.384.7504<br>
sardalan@law.harvard.edu<br>
sahmed@law.harvard.edu